Marina **BELTRAN**, an individual; on behalf of herself and all others similarly situated, Plaintiff,

v.

**AVON PRODUCTS, INC.**, a New York Corporation, Defendant.

Case No. 2:12–cv–02502–CJC (ANx).

United States District Court,
C.D. California,
Southern Division.

June 1, 2012.

Michael J. Avenatti, Scott Howard Sims, Eagan Avenatti LLP, Newport Beach, CA, Filippo Marchino, Damon Rogers, The X–Law Group PC, Los Angeles, CA, for Plaintiff.

Nicholas James Begakis, Dennis S. Ellis, Katherine Frenck Murray, Paul Hasting LLP, Los Angeles, CA, for Defendants.

## ORDER GRANTING DEFENDANT'S MOTION TO DISQUALIFY PLAINTIFF'S COUNSEL

CORMAC J. CARNEY, District Judge.

## I. INTRODUCTION AND BACKGROUND

Plaintiff Marina Beltran ("Plaintiff") brought this nationwide putative class action against cosmetic company Avon Products, Inc. ("Avon"), alleging that Avon defrauded American consumers by marketing and advertising its products as being free of animal testing when, in fact, it tested on animals. Plaintiff is represented by the law firms of Eagan Avenatti, LLP ("Eagan Avenatti") and the X–Law Group, P.C. ("X–Law Group"). Avon's lead counsel is Dennis S. Ellis with the law firm of Paul Hastings, LLP ("Paul Hastings"). Shortly after Plaintiff filed suit, Avon moved to disqualify both firms representing Plaintiff under California Rule of Professional Conduct 3–310(E) on the grounds that Jason M. Frank, a partner with Eagan Avenatti, previously represented Avon in a products liability case and two consumer class actions when he was an attorney at Paul Hastings from 2001 to 2007. Mr. Frank spent over 300 hours working on Avon matters, for which Avon was billed over $100,000. Mr. Frank is not currently part of Plaintiff's litigation team. Given Mr. Frank's prior representations of the company, Avon argues that Mr. Frank has actual knowledge of adverse confidential information. Avon argues that such knowledge is also presumed because the former and present Avon matters are substantially related. Avon further argues that although Mr. Frank is not counsel of record for Plaintiff, his conflict of interest is imputed to his firm as well as to the X–Law Group, such that both firms must be vicariously disqualified. Avon's motion came on hearing on May 21, 2012. After carefully considering the parties' papers, the record in this case, and oral arguments from the parties' counsel, Avon's motion is GRANTED. Under California law and the Rules of Professional Conduct, disqualification of Eagan Avenatti and the X–Law Group is warranted because Mr. Frank has both actual and presumptive possession of confidential information that is material to this case, and his conflict of interest is imputed to both firms.

### A. Current Litigation

On March 23, 2012, Plaintiff filed the instant suit against Avon. (Dkt. No. 1.)[1]

---

[1] On February 28, 2012, Plaintiff previously filed a similar nationwide class action against defendants Avon, Estee Lauder, Inc., and Mary Kay, Inc., arising from misrepresentations over animal testing (*Beltran v. Estee Lauder, Inc.*, Case No. SACV12–00312 ["*Estee Lauder*"]), which is currently pending in this Court. After notice of Avon's intent to file the instant motion on March 12, 2012, (Ellis Decl. ¶ 11 & Exh. C), Plaintiff dismissed her claims against Avon in *Estee Lauder* on March 22, 2012, (Dkt. No. 15, *Estee Lauder;* Ellis Decl., Exh. D), and filed the present suit against Avon the next day. Eagan Avenatti and the X–Law Group are also counsel of record for the plaintiffs in *Estee Lauder*.

Plaintiff is represented by Michael J. Avenatti and Scott H. Sims from Eagan Avenatti as well as Filippo Marchino and Damon Rogers from the X–Law Group. Both Eagan Avenatti and the X–Law Group are small one-office firms, consisting of less than ten and four attorneys, respectively. (Ellis Decl., Exhs. F, G.) On March 28, 2012, Mr. Ellis and two of his colleagues from Paul Hastings filed their notice of appearance as counsel of record for Avon. (Dkt. Nos. 4–6.)

Plaintiff filed the operative First Amended Complaint ("FAC") on April 23, 2012. (Dkt. No. 22.) In the FAC, Plaintiff seeks to represent in excess of one million consumers in the United States, including those in California, who purchased cosmetics from Avon during the period in which Avon allegedly made false or misleading representations that it did not engage in animal testing. (FAC ¶¶ 19–27.) Plaintiff alleges that around 1989 Avon banned animal testing and launched an extensive marketing and advertising campaign touting itself as a company that did not and would not test any of its products on animals. (*Id.* ¶ 9.) Plaintiff alleges that Avon's marketing and advertising campaign consisted of (i) pledging to the People for the Ethical Treatment of Animals ("PETA") that it did not and would test any of its products on animals to ensure the company's placement on PETA's "Do Not Test" list, (ii) representing on the company's website that it did not conduct testing on animals, and (iii) representing to the company's sales force—who, in turn, relayed to consumers—that Avon did not test any of its products on animals. (*Id.* ¶ 8.) In addition to these representations, Plaintiff alleges that Avon placed inadequate and misleading statements on its website around 2010 that it did not test any products on animals " 'except when required by law.' " (*Id.* ¶ 11.) Despite representations of being "cruelty free," Plaintiff alleges that Avon did in fact conduct testing on animals in 1990, when the company began selling its products in China, and that the company knowingly and intentionally continued to make representations to the contrary. (*Id.* ¶¶ 8–9, 13.) Plaintiff alleges that Avon's representations of not testing on animals was material information to consumers, who, including Plaintiff, would not have purchased any product from Avon had they known the company tested on animals. (*Id.* ¶¶ 12, 18.) Plaintiff alleges that Avon reaped hundreds of millions of dollars in revenue by selling cosmetics to consumers who relied on the company's false and misleading representations. (*Id.* ¶ 12.) Based on these allegations, Plaintiff asserts five causes of action against Avon for: (1) fraud/fraudulent concealment, (2) violations of California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof.Code §§ 17200 *et seq.*, (3) violation of California's False Advertising Law ("FAL"), Cal. Bus. & Prof.Code §§ 17500 *et seq.*, (4) violation of California's Consumers Legal Remedies Act ("CLRA"), Cal. Civ.Code §§ 1750 *et seq.*, and (5) injunctive relief. Plaintiff requests, *inter alia*, declaratory and injunctive relief, restitution, compensatory damages exceeding $100 million, and punitive damages. (*Id.*, Prayer.) On May 7, 2012, Avon moved to dismiss the FAC and strike portions of the class allegations, set for hearing on July 2, 2012. (Dkt. Nos. 24–25.)

**B. Jason Frank's Prior Representations of Avon**

Mr. Frank has been a partner at Eagan Avenatti since February 2009. (Ellis Decl. ¶ 3; Frank Decl. ¶¶ 1–2.) Mr. Frank is not one of the attorneys representing Plaintiff. (Frank Decl. ¶ 1.) Before joining Eagan Avenatti, Mr. Frank was employed at Paul Hastings as a summer associate, associate, and eventually partner from 1996 to 2009, with the exception of a two-

year period between June 1999 and February 2001 when he worked at another firm. (Ellis Decl. ¶¶ 3, 9; Frank Decl. ¶ 2.) Mr. Frank and Mr. Ellis, a partner at Paul Hastings and Avon's current lead counsel on this matter, have been colleagues and friends for over 15 years. (Ellis Decl. ¶ 3; Frank Decl. ¶ 3.) Avon has been a client of Paul Hastings for approximately 20 years. (Ellis Decl. ¶ 2.) Since 2001, Mr. Ellis has represented Avon in several matters and has served as Paul Hastings' "Relationship Partner" for Avon since 2004. (*Id.*) During his tenure at Paul Hastings, Mr. Frank worked with Mr. Ellis on several matters and shared the same legal assistant from 2001 to 2009. (Ellis Decl. ¶ 3.). Specifically, while at Paul Hastings, Mr. Frank worked on the following three cases involving Avon as the defendant.

First, in 2001, Paul Hastings represented Avon in *Beck v. Avon Products, Inc.*, a products liability action filed in San Mateo County Superior Court (Case No. 404423 ["*Beck*"]). (Ellis Decl. ¶ 4 & Exh. A [Time Entries for Matter No. 34671–95669].) The plaintiff in *Beck* alleged that she suffered facial injuries following her use of Avon's ANEW All–In–One Perfecting Complex, SPF 15. (Ellis Decl. ¶ 4.) Mr. Ellis was the senior associate on the *Beck* case. (*Id.*) The plaintiff in *Beck* took over 20 corporate depositions of Avon on various aspects of Avon's business, from product manufacturing to testing and marketing. (*Id.*) In October and November 2001, Mr. Frank worked on the matter under Mr. Ellis and Alan Steinbrecher, the lead Paul Hastings partner on the case. (Ellis Decl. ¶ 4 & Exh. A; Frank Decl. ¶ 9; Supp. Ellis Decl. ¶ 6.) Mr. Frank's main tasks included, among other things, preparing oppositions to motions to compel second corporate depositions; traveling to

Northern California with Mr. Ellis to argue the motions before a discovery referee; drafting an opposition to the discovery referee rulings; and strategizing on settlement. (Ellis Decl. ¶ 4 & Exh. A; Frank Decl. ¶ 9; Supp. Ellis Decl. ¶¶ 7–10.) Mr. Frank worked a total of 143.5 hours on the case, and Avon was billed $41,615 for his work. (Ellis Decl., Exhs. A, B.)

Second, in 2003, Paul Hastings represented Avon in *Blakemore v. Avon Products, Inc.*, a consumer class action filed in Los Angeles Superior Court (Case No. BC292702 ["*Blakemore*"]) by Avon's Independent Sales Representatives, alleging that Avon shipped its Independent Sales Representatives products they did not order. (Ellis Decl. ¶ 5 & Exh. A [Time Entries for Matter No. 34671–00006]; Frank Decl. ¶ 14.) In *Blakemore*, Mr. Ellis served as the senior associate. (Ellis Decl. ¶ 5.) From April 2003 to May 2005, Mr. Frank again worked under Mr. Ellis and Alan Steinbrecher. (*Id.*; Supp. Ellis Decl. ¶ 6.) Mr. Frank's primary tasks included, among other things, discussing discovery strategies with Mr. Ellis and Mr. Steinbrecher; drafting a motion to strike the complaint; and conferencing with the litigation team on various pretrial motions, research issues, and appeal. (Ellis Decl. ¶ 5 & Exh. A; Supp. Ellis Decl. ¶¶ 11–12.) Mr. Frank worked a total of 70.5 hours, and Avon was billed $14,250 for his work.[2]

Third, in 2005, Paul Hastings represented Avon in *Scheuffler v. Avon Products, Inc.*, another consumer class action filed in San Diego County Superior Court (Case No. GIC840550 ["*Scheuffler*"]). (Ellis Decl. ¶ 6 & Exh. A [Time Entries for Matter No. 34671–00009]; Frank Decl. ¶ 11; Quintano Decl. ¶ 5.) In *Scheuffler*, the plaintiff alleged that Avon had de-

---

**2.** Mr. Frank's time entries state that he worked a total of 70.50 hours, amounting to $26,786.25, but Avon was actually billed for 37.50 of that time for $14,250. (Ellis Decl., Exh. A; Frank Decl., Exh. 1.)

frauded the general public by misleadingly advertising and marketing certain products as having "anti-aging benefits." (Ellis Decl. ¶ 6; Frank Decl. ¶ 11.) Mr. Ellis was the lead partner on the case, and Mr. Frank worked under him as the senior associate on the matter from February 2005 to April 2007. (Ellis Decl. ¶ 6; Supp. Ellis Decl. ¶ 13.) Mr. Frank was primarily responsible for the day-to-day case management. (Ellis Decl. ¶ 6 & Exh. A.) Mr. Frank's tasks included conferring with the litigation team regarding Avon's defense strategy; corresponding with Avon regarding case development; drafting demurrer and motion to strike papers; conducting research for motions; helping prepare Avon's document retention notice; and arguing on behalf of Avon at the demurrer hearing, among others. (Ellis Decl. ¶ 6 & Exh. A; Supp. Ellis Decl. ¶¶ 13–14; Quintano Decl. ¶¶ 5–8.) Mr. Frank worked a total of 121.75 hours, and Avon was billed $50,710 for his work.[3]

In total, Mr. Frank spent 336 hours working on litigation matters for Avon. (Ellis Decl. ¶ 7 & Exh. A.) Paul Hastings billed Avon $106,575 for work performed by Mr. Frank. (Ellis Decl. ¶ 8 & Exhs. A, B.) In February 2007, Mr. Frank was elected partner at Paul Hastings. (Ellis Decl. ¶ 9.) Mr. Frank left Paul Hastings for Eagan Avenatti in February 2009. (*Id.*) Scott Sims, an associate at Eagan Avenatti who is also representing Plaintiff in this case, was employed at Paul Hastings from 2004 to 2008 and worked with Mr. Frank when Mr. Frank was elected partner. (*Id.* ¶ 10.)

### C. Motion to Disqualify Plaintiff's Counsel

On February 28, 2012, after initially reaching out to Mr. Ellis, Mr. Frank informed his friend and former colleague that Eagan Avenatti would be filing suit against Avon and gave Mr. Ellis a "heads-up" on the case. (Supp. Ellis Decl. ¶ 3.) On the same day, Plaintiff filed her Complaint against Avon, Estee Lauder, and Mary Kay in the *Estee Lauder* action. (Dkt. No. 1, *Estee Lauder.*) Shortly thereafter, Avon retained Paul Hastings to handle this case. (Ellis Decl. ¶ 4.) On March 12, 2012, Mr. Ellis telephoned Mr. Frank and advised him that Avon intended to seek disqualification of Plaintiff's counsel. (Ellis Decl. ¶ 11; Frank Decl. ¶ 18.) The next day, Mr. Ellis sent Eagan Avenatti and the X–Law Group a follow-up letter regarding Avon's pending motion to disqualify Plaintiff's counsel. (Ellis Decl. ¶ 12 & Exh. C.)

On April 2, 2012, Avon moved to disqualify Plaintiff's counsel pursuant to California Rule of Professional Conduct 3–310(E), originally set for hearing on April 30, 2012. (Dkt. No. 11.) Plaintiff moved *ex parte* for a continuance of the hearing date or for an extension of time to respond to Avon's motion. (Dkt. No. 12.) The Court granted Plaintiff's request for a continuance of the hearing date to May 7, 2012. (Ct. Order, Dkt. No. 14, Apr. 9, 2012.) Pursuant to further stipulation and Court Order, the hearing on Avon's motion to disqualify was rescheduled to May 21, 2012. (Ct. Order, Dkt. No. 17, Apr. 13, 2012.) Plaintiff filed an opposition to Avon's motion, and Avon submitted a reply. (Dkt. Nos. 21, 23.) Plaintiff filed a request for an order for Mr. Frank to be permitted to appear telephonically at the hearing, which the Court denied. (Ct. Order, Dkt. No. 29, May 17, 2012.) Counsel for both parties presented oral arguments on May 21, 2012 at 1:30 p.m. The Court thereafter requested Avon to file for *in camera* inspection unredacted portions of Mr. Frank's time

---

3. Mr. Frank worked a total of 121.75 hours, amounting to $52,516.25, but billed Avon for 117.50 of that time for $50,710. (Ellis Decl., Exh. A; Frank Decl., Exh. 1.)

entries. (Ct. Order, Dkt. No. 30, May 2012.) Avon timely complied with the Court's request and submitted Mr. Frank's unredacted time entries on May 23, 2012. (Dkt. No. 32.)

Avon moves to disqualify Plaintiff's counsel, Eagan Avenatti and the X–Law Group, on two independent grounds. First, Avon argues that Mr. Frank has acquired material, confidential information from his former representations of Avon in the *Beck, Blakemore,* and *Scheuffler* matters in violation of California Rule of Professional Conduct 3–310(E). (Def.'s Mem. in Supp. Motion to Disqualify, at 1–2, 5, 9–10.) These confidential matters include insights into Avon's business practices and corporate witnesses, Avon's defense strategy, its product testing protocols, and its advertising and marketing strategies and practices. (*Id.*) Second, Avon argues that Mr. Frank's acquisition of confidential information is presumed under California's "substantial relationship" test given the extent of Mr. Frank's involvement in the prior Avon matters and the implication of similar factual and legal issues. (*Id.* at 9–15.) Although Mr. Frank is not part of Plaintiff's litigation team, Avon further argues that knowledge acquired by Mr. Frank must be imputed to Eagan Avenatti as well as the X–Law Group, and that an ethical wall is neither legally sufficient nor proper under the circumstances to overcome Mr. Frank's conflict of interest. (*Id.* at 2, 15–23.) In support of its motion, Avon has provided two declarations from Mr. Ellis, a declaration from Laura Quintano (Avon's Chief Global Marketing Counsel and former Assistant General Counsel), unredacted time entries of Mr. Frank submitted under seal, billing statements, an opposition to a discovery motion Mr. Frank prepared and filed, among other evidence.

In her opposition, Plaintiff contends that both grounds for disqualification fail.

Plaintiff argues that Avon has not provided sufficient evidence that Mr. Frank possesses material, confidential information. (Pl.'s Opp'n, at 2, 10–11.) Plaintiff further contends that Avon has not satisfied its burden of showing a substantial relationship between the *Beck, Blakemore,* and *Scheuffler* matters and the instant action as none of the former cases involve claims related to animal testing. (*Id.* at 2, 12–19.) Plaintiff further argues that even if Mr. Frank acquired confidential information, a sufficient and timely ethical wall was implemented that would obviate the need to disqualify Eagan Avenatti. (*Id.* at 2, 20–22.) Finally, even if the disqualification of Eagan Avenatti were warranted, Plaintiff argues that there is no clear authority requiring the vicarious disqualification of Eagan Avenatti's co-counsel the X–Law Group. (*Id.* at 2, 22–23.) In support of her arguments, Plaintiff provided declarations from Mr. Frank and Mr. Avenatti.

## II. LEGAL STANDARD

### A. Disqualification Generally

 "The authority of a trial court to disqualify an attorney derives from the power inherent in every court [t]o control in furtherance of justice, the conduct of its ministerial officers." *City & Cnty. of S.F. v. Cobra Solutions, Inc.,* 38 Cal.4th 839, 846, 43 Cal.Rptr.3d 771, 135 P.3d 20 (2006) (citation and quotes omitted); *see also United States v. Wunsch,* 84 F.3d 1110, 1114 (9th Cir.1996). The court applies state law in determining motions to disqualify counsel. *In re Cnty. of L.A.,* 223 F.3d 990, 995 (9th Cir.2000). Attorneys practicing in this district must "be familiar with and comply with the standards of professional conduct required of members of the State Bar of California and contained in the State Bar Act, the Rules of Professional Conduct of the State Bar of

California, and the decisions of any court applicable thereto." Local Rule 83–3.1.2.

■■■ Because motions to disqualify are often tactically motivated and can be disruptive to the litigation process, disqualification is a drastic measure that is generally disfavored and imposed only when absolutely necessary. *See Optyl Eyewear Fashion Int'l Corp. v. Style Cos., Ltd.*, 760 F.2d 1045, 1050 (9th Cir.1985) (recognizing that because of the potential for abuse, disqualification motions "should be subjected to particularly strict judicial scrutiny" (citations and quotes omitted)). Nevertheless, "the paramount concern must be the preservation of public trust both in the scrupulous administration of justice and in the integrity of the bar." *State Farm Mut. Auto. Ins. Co. v. Fed. Ins. Co.*, 72 Cal. App.4th 1422, 1428, 86 Cal.Rptr.2d 20 (1999). In considering a motion to disqualify, the district court must make findings supported by substantial evidence. *The People ex rel. Dep't of Corps. v. SpeeDee Oil Change Sys., Inc.*, 20 Cal.4th 1135, 1143, 86 Cal.Rptr.2d 816, 980 P.2d 371 (1999).

## B. Successive Representation

■■ A disqualification of an attorney may be predicated upon the existence of a conflict of interest. *Id.* at 1139, 86 Cal. Rptr.2d 816, 980 P.2d 371. Avon relies on California Rule of Professional Conduct 3–310(E), which states that "[a] member shall not, without the informed written consent of the client or former client, accept employment adverse to the client or former client where, by reason of the representation of the client or former client, the member has obtained confidential information material to the employment." Cal. Rule of Prof'l Conduct 3–310(E).

■■ In successive representation cases, disqualification of counsel is warranted under two situations: (1) the attorney in fact has adverse confidential information or (2) the attorney's acquisition of confidential information is presumed because the prior and present cases are substantially related. *See H.F. Ahmanson & Co. v. Salomon Bros., Inc.*, 229 Cal.App.3d 1445, 1452, 280 Cal.Rptr. 614 (1991); *Faughn v. Perez*, 145 Cal.App.4th 592, 603, 51 Cal.Rptr.3d 692 (2006). In the first scenario, the former client "may seek to disqualify a former attorney from representing an adverse party by showing the former attorney actually possesses confidential information adverse to the former client." *H.F. Ahmanson & Co.*, 229 Cal. App.3d at 1452, 280 Cal.Rptr. 614. To create a conflict requiring disqualification, "the information acquired during the first representation [must] be 'material' to the second; that is, it must be found to be directly at issue in, or have some critical importance to, the second representation." *Farris v. Fireman's Fund Ins. Co.*, 119 Cal.App.4th 671, 680, 14 Cal.Rptr.3d 618 (2004).

■■■ However, it is well-established that proof of actual possession of confidential information is not necessary to disqualify the former attorney. *H.F. Ahmanson & Co.*, 229 Cal.App.3d at 1452, 280 Cal. Rptr. 614; *Trone v. Smith*, 621 F.2d 994, 1000 (9th Cir.1980) ("[I]t is not necessary to establish that confidential information was in fact given, the reasonable possibility is sufficient.") Rather, under the second scenario for disqualification, it is enough that the attorney is acting adversely to the former client and a "substantial relationship" exists between the subjects of the current and former engagements. *H.F. Ahmanson & Co.*, 229 Cal.App.3d at 1452 & n. 2, 280 Cal.Rptr. 614; *see also Adams v. Aerojet–Gen. Corp.*, 86 Cal. App.4th 1324, 1332, 104 Cal.Rptr.2d 116 (2001); *Trone*, 621 F.2d at 998 ("The relevant test for disqualification is whether the former representation is 'substantially re-

lated' to the current representation."). "As part of its review, the court should examine the time spent by the attorney on the earlier cases, the type of work performed, and the attorney's possible exposure to formulation of policy or strategy." *H.F. Ahmanson & Co.*, 229 Cal.App.3d at 1455, 280 Cal.Rptr. 614 (citation and quotes omitted). In a successive representation case with potential conflicts of interest, as here, "the chief fiduciary value jeopardized is that of client *confidentiality.*" *Flatt v. Super. Ct.*, 9 Cal.4th 275, 283, 36 Cal.Rptr.2d 537, 885 P.2d 950 (1994). Where a substantial relationship between the successive representations is established, "access to confidential information by the attorney in the course of the first representation ... is *presumed* and disqualification of the attorney's representation of the second client is mandatory. *Flatt*, 9 Cal.4th at 283, 36 Cal.Rptr.2d 537, 885 P.2d 950. "[I]ndeed, the disqualification extends vicariously to the entire firm." *Id.; see also SpeeDee*, 20 Cal.4th at 1139, 86 Cal.Rptr.2d 816, 980 P.2d 371 ("When a conflict of interest requires an attorney's disqualification from a matter, the disqualification normally extends vicariously to the attorney's entire law firm."); *Trone*, 621 F.2d at 999 ("Once the attorney is found to be disqualified, both the attorney and the attorney's firm are disqualified from suing the former client.")

## III. DISCUSSION

The instant case presents an unfortunate and awkward set of circumstances in which two former colleagues and long-time friends who previously worked together in representing a major corporate client now find themselves on opposite sides in a case involving that same client. The parties do not dispute that Mr. Frank has worked on the *Beck, Blakemore,* and *Scheuffler* matters involving Avon as a defendant when he was employed at Paul Hastings and that he spent over 300 hours totaling over

$100,000 in billable time on those cases. The parties further do not dispute that Mr. Frank's law firm is currently representing Plaintiff in a consumer class action that is adverse to Avon. Plaintiff also does not contest that her counsel did not obtain Avon's written consent to waive any potential conflicts of interest arising from the successive representations by Eagan Avenatti. The parties, however, take issue with whether (i) Mr. Frank has acquired material, confidential information from his former representations of Avon, (ii) whether *Beck, Blakemore,* and *Scheuffler* are substantially related to the present case, such that Mr. Frank's possession of confidential information is presumed, and (iii) whether Eagan Avenatti and the X–Law Group should be vicariously disqualified.

### A. Material Confidential Information

▉▉▉ There is sufficient evidence that Mr. Frank has acquired material, confidential information from his prior representations of Avon in the *Beck, Blakemore,* and *Scheuffler* matters. Mr. Ellis, who worked closely with and supervised Mr. Frank in the previous Avon actions, submitted a sworn declaration that Mr. Frank acquired adverse confidential information regarding Avon's business, corporate witnesses, legal strategies, product testing protocols, and marketing and advertising practices. (Ellis Decl. ¶¶ 4–6, 22). Mr. Ellis states that Mr. Frank opposed motions seeking discovery of numerous aspects of Avon's business, including testing protocols, product design and manufacturing, product benefits, market niches, competitor products, and communications with government agencies. (Ellis Decl. ¶ 4.) Mr. Ellis further states that in the *Blakemore* case, he consulted with Mr. Frank on tactical decisions related to the case and shared Avon's confidential information with him. (*Id.* ¶ 5.) On the *Scheuffler* action, Mr. Ellis

states that Mr. Frank developed and carried out Avon's strategy for litigating consumer class actions asserting false and unfair competition claims. (*Id.* ¶ 6.)

In her Opposition, Plaintiff argues that these statements are merely conclusory, and Avon has failed to submit any supporting evidence. (Pl.'s Opp'n, at 10–11.) Mr. Frank submitted a sworn declaration stating that while employed at Paul Hastings, he worked on a few Avon matters in "an extremely limited basis" and mostly did "spot-work" as a favor for Mr. Ellis when he needed help; that he had "never been involved in any settlement discussions or anything else related to the settlement of any Avon matter"; that the only person he recalls ever speaking to at Avon was "an assistant to the general counsel" to provide updates on a demurrer in the *Scheuffler* matter; that he did not review any Avon documents with the exception of public advertisements; and that most of his work involved drafting publicly filed pleadings. (Frank Decl. ¶ 4.) More specifically, in the *Beck* case, Mr. Frank states he did not defend any of the twenty corporate depositions of Avon and, in fact, did not read any portions of the deposition transcripts in preparing oppositions to discovery motions. (*Id.* ¶ 10.) On the *Blakemore* matter, Mr. Frank states he only spent a few days drafting a reply and a motion to strike as a favor for Mr. Ellis and another former colleague and did not help develop Avon's litigation strategy for the consumer class action. (*Id.* ¶ 15.) Mr. Frank states *Scheuffler* was a short-lived matter dismissed on demurrer, and he did not utilize any unique litigation strategy in that case. (*Id.* ¶ 13.) Rather, Mr. Frank states he only employed the same litigation strategy he used in his previous false advertising cases for other corporate clients, and that all the information he learned in the *Scheuffler* case was in publicly filed documents. (*Id.* ¶ 13.) Based on these assertions, Mr. Frank states, "with a hundred

percent certainty," that he does not know and has never possessed any confidential information about Avon that would be relevant to the present lawsuit. (*Id.* ¶ 6; *see also id.* ¶¶ 5, 9, 13, 16.)

Mr. Frank's representations of his involvement in the previous Avon matters are simply implausible in light of the scope and extent of his contributions to Avon's defense of those cases, which spanned the course of six years and totaled 336 hours for over $100,000. Mr. Frank's representations are also implausible given Avon's status as a long-term client of Paul Hastings and his close working relationship with Mr. Ellis, who continuously worked on Avon matters and acquired cumulative knowledge of Avon's business practices, product testing protocols, and defense and settlement strategies from those representations. Mr. Frank's statements are also flatly belied by his time entries, the unredacted version of which Avon submitted under seal. Despite Mr. Frank's efforts to minimize his role on the previous Avon matters, Mr. Frank's time entries and Avon's supporting declarations provide ample evidence to the Court that Mr. Frank's involvement in the prior Avon matters was substantial and exposed him to confidences that were not part of the public record.

Specifically, in the *Beck* matter, Mr. Frank's time entries show that he worked under both Mr. Ellis and Mr. Steinbrecher, the partner in charge of the matter, for a total of 143.5 hours in preparing oppositions to the plaintiff's motion to compel corporate depositions nos. 30 and 33 through 39. This strongly suggests that Mr. Frank was not simply doing a "favor" for Mr. Ellis, but for two months in 2001, worked deliberately and intensely on the matter under the collective supervision of the lead partner and senior associate on the case. As confirmed by the time en-

tries (including the unredacted version, which the Court has reviewed), Mr. Frank's preparations of the discovery motions also entailed a review of the relevant case materials, review of a confidential mediation brief, research into relevant law, and substantial discussions with Mr. Ellis and Mr. Steinbrecher. (Ellis Decl., Exh. A); *see also* Def.'s Reply, at 7 ("Mr. Frank's timesheets for *Beck* confirm that he reviewed deposition transcripts when preparing the oppositions, and that he also reviewed Avon's confidential mediation brief.") Mr. Frank's oppositions to the motions to compel relate to witnesses that the plaintiffs in *Beck* were seeking to depose a *second* time. Preparing the oppositions necessitated that Mr. Frank review at least some portion of the first deposition transcripts and that he acquire a reasonably comprehensive understanding of the current and former employees of Avon who were deposed in the case. Mr. Ellis states he summarized all the depositions taken in *Beck* and provided summaries to Mr. Frank. (Supp. Ellis Decl. ¶ 7.) Indeed, in Avon's opposition to the plaintiffs' motion to compel re: corporate deposition no. 38 drafted by Mr. Frank, Mr. Frank cites to portions of depositions of six Avon employees as evidence that further deposition sought by the plaintiffs was unreasonably duplicative and cumulative. (*Id.*, Exh. B, at 2, 5.) Mr. Ellis states in a sworn declaration that some of the deposition testimony from Avon's witnesses were subject to a stipulated protective order recommended by the discovery referee and entered by the court. (Supp. Ellis Decl. ¶ 7; *see also* 5/21/12 Hr'g Tr. 29:25–30:6.) The deposition testimony included discussion of product testing performed by Avon. (Supp. Ellis Decl. ¶ 7.) As Avon points out in its reply brief, neither the deposition testimony nor the mediation brief were public documents. (Def.'s Reply, at 7–8.) Mr. Frank's time entries further evidence the fact that Mr. Frank engaged in strategy discussions with Mr. Ellis and Mr. Steinbrecher regarding settlement issues. Mr. Frank's involvement in the *Beck* matter, as documented by his times entries, provides persuasive evidence that Mr. Frank acquired confidential information regarding Avon's product testing, its business practices and personnel, and its settlement strategies. Such information is material to this action, as this case also implicates Avon's practice and method of testing its products, and if imparted to Plaintiff, would provide her with an unfair litigation advantage. (*See* Supp. Ellis Decl. ¶¶ 8–9.)

Mr. Frank's time entries for *Blakemore* also demonstrate that his work on that case was not simply a "favor" for his Paul Hastings colleagues. Rather, Mr. Frank devoted substantial time and work on the matter, totaling 70.5 hours over the course of two years from 2003 to 2005, for which Avon was billed over $14,000. Mr. Frank did not merely perform discrete, isolated tasks. As in *Beck*, Mr. Frank engaged in hours of discussions with Mr. Ellis and his litigation team regarding the class action suit, Avon's discovery and litigation strategy, substantive legal issues related to consumer class complaints, and various motions, including a protective order and demurrer, among other topics. (Ellis Decl., Exh. A.) Mr. Frank also prepared a motion to strike and discussed issues related to a writ and appeal. (*Id.*) Ms. Quintano averred that for the purpose of settlement, Avon produced to the plaintiffs' counsel highly sensitive and confidential Avon documents. (Quintano Decl. ¶ 9.) The Court finds that Avon presented sufficient evidence that Mr. Frank's involvement on the *Blakemore* case exposed him to confidential information regarding Avon's settlement strategy in a consumer class action that is also relevant and material to the present consumer class action.

Finally, Mr. Frank's work on the *Scheuffler* case constitutes his most substantive involvement among his previous Avon matters. Mr. Frank represents that the extent of his involvement on the case essentially boils down to filing a demurrer and application of well-worn litigation strategies in defending against false advertising and unfair competition class actions. (Frank Decl. ¶ 13.) This is simply not credible in light of Mr. Frank's lead role as the senior associate on the case who contributed a total of 121.75 hours over the course of two years. The time entries confirm that, along with drafting a demurrer and motion to strike the class allegations, Mr. Frank handled the day-to-day case management, conferred extensively with Mr. Ellis, the partner in charge on the case, regarding Avon's defense strategy, and communicated directly with Avon's in-house counsel. (Ellis Decl., Exh. A; *see also* Quintano Decl. ¶¶ 5–8.) At the commencement of the case, Mr. Ellis states that Mr. Frank prepared a detailed letter to Avon regarding Paul Hastings' advice and strategy for the case related to the demurrer and beyond. (Supp. Ellis Decl. ¶ 14.) Mr. Ellis states that Avon adopted the strategy, and as a result, Mr. Frank became privy to Avon's litigation philosophy related to consumer class actions alleging false advertising. (*Id.*) Mr. Frank also helped prepare Avon's document retention notice, during which Ms. Quintano states that Mr. Frank acquired knowledge about Avon's different approaches to the document retention notice based on the company's specific practices. (Quintano Decl. ¶ 6.) Ms. Quintano further states that Mr. Frank was copied on email correspondences between Mr. Ellis and Avon regarding Avon's claim substantiation process and efficacy testing procedures. (*Id.* ¶ 8.) Avon and Mr. Frank discussed plans for the litigation in the event that Avon did not prevail on its demurrer. (*Id.* ¶ 6.) Despite Mr. Frank's characterization that

he only applied routine litigation strategy in defending Avon, Ms. Quintano states that Mr. Frank specifically identified arguments that Avon could make that the other co-defendants had not made in their demurrers and discussed with Avon one particular line of argument with which Avon had previously expressed concerns in light of its confidential advertising practices. (*Id.* ¶ 7.) Mr. Frank also informed Avon that the plaintiffs sought a continuance of the demurrer hearing on several grounds, including that Avon's demurrer in particular contained a number of additional arguments that the other defendants had not raised in their demurrers. (*Id.*) Indeed, despite his efforts to now downplay his role in *Scheuffler,* Mr. Frank appears to have cited his successful defense of Avon in that case as support for his election to partnership at Paul Hastings. (Supp. Ellis Decl. ¶ 13.) The Court finds that Avon has provided ample evidence that Mr. Frank obtained confidential information during his representation of Avon in *Scheuffler* that relate to Avon's defense strategies against false advertising and unfair competition claims, testing procedures, and Avon's business practices, which are adverse to the instant consumer class action involving similar legal claims.

**B. Substantial Relationship**

 Mr. Frank's possession of confidential information is also presumed because his prior representations of Avon are substantially related to the present case. Three factors should be considered in applying the substantial relationship test: (1) similarities between the two factual situations, (2) the legal questions posed, and (3) the nature and extent of the attorney's involvement in the cases. *H.F. Ahmanson & Co.,* 229 Cal.App.3d at 1455, 280 Cal. Rptr. 614 (citation and quotes omitted); *accord Adams,* 86 Cal.App.4th at 1332, 104 Cal.Rptr.2d 116. A "substantial relationship" exists when "the evidence before the

trial court supports a rational conclusion that information material to the evaluation, prosecution, settlement or accomplishment of the former representation given its factual and legal issues is also material to the evaluation, prosecution, settlement or accomplishment of the current representation given its factual and legal issues." *Jessen v. Hartford Cas. Ins. Co.*, 111 Cal. App.4th 698, 713, 3 Cal.Rptr.3d 877 (2003). If a "reasonable possibility" exists that "confidences were disclosed which could be used against the client later, adverse representation, a substantial relationship between the two cases is presumed." *Trone*, 621 F.2d at 998. "[T]he underlying concern is the possibility, or appearance of the possibility" that the attorney may have received confidential information during the prior representation relevant to the subsequent matter. *Id.* at 999.

■ Here, there is abundant evidence that supports a rational conclusion that information material to the prior Avon matters is also material to the present lawsuit. Although none of the prior Avon cases specifically involved claims that Avon purportedly misrepresented that it did not test on animals, identity of claims are not required. *See Trone*, 621 F.2d at 1000 ("The substantial relationship test does not require that the issues in the two representations be identical.") The *Beck* products liability action implicated Avon's testing protocols, which is also relevant and material to the instant case while both *Blakemore* and *Scheuffler* dealt with consumer class actions. *Scheuffler* also involved claims that Avon defrauded American consumers through false advertising and misrepresentation of its products. As in *Scheuffler*, the present case involves legal claims for false advertising and unfair competition. Finally, as dis-

cussed above, Mr. Frank's work in the prior Avon matters are substantive and wide-ranging. Mr. Frank engaged in extensive discussions with Mr. Ellis regarding Avon's discovery, litigation, and settlement strategies; reviewed discovery; drafted a variety of motions; advocated on behalf of Avon at hearings; researched legal issues relevant to consumer class actions; managed a nationwide consumer class action for Avon; and conferred directly with Avon's in-house counsel. Through his representation of Avon over the course of six years amounting to over 300 hours and costing Avon over $100,000, there is—at the very least—a "reasonable possibility" that he acquired confidential information regarding Avon's business and marketing practices, its litigation and settlement strategies, and its testing protocols that are not publicly available and, if imparted to Plaintiff, would confer a significant advantage to Plaintiff in this lawsuit. *See Trone*, 621 F.2d at 1000 ("[I]t is not necessary to establish that confidential information was in fact given, the reasonable possibility is sufficient.")

Furthermore, disqualification is warranted in this case because enabling Mr. Frank's firm to represent Plaintiff compromises the appearance of judicial integrity and standards of professional conduct for the bar. Mr. Ellis, now counsel for Avon in the present case, previously worked closely with Mr. Frank in defending Avon in consumer class actions. Mr. Frank also had significant contact with Ms. Quintano during his prior representations of Avon, and Ms. Quintano, now Avon's Chief Global Marketing Counsel, is the company's primary contact for this action. The associates on both sides also appear to have significant present and past professional relationships with Mr. Frank.[4] Enabling

---

4. Mr. Sims, an associate at Eagan Avenatti, was previously an associate at Paul Hastings. Mr. Frank states that he worked with Kath-

erine Murray, an associate and counsel for Avon at Paul Hastings, for nearly a decade. (Frank Decl. ¶ 3.) Mr. Frank also helped train

Mr. Frank's firm to represent Plaintiff against Avon would undermine the countenance of professionalism, which the substantial relationship test is intended to protect. *Trone*, 621 F.2d at 998 ("Both the fact and appearance of total professional commitment are endangered by adverse representation in related cases.")

## C. Vicarious Disqualification

█ Although Mr. Frank is not part of Plaintiff's litigation team, his conflict of interest is imputed to his law firm Eagan Avenatti. *Flatt*, 9 Cal.4th at 283, 36 Cal. Rptr.2d 537, 885 P.2d 950; *see also City & Cnty. of S.F.*, 38 Cal.4th at 847–48, 43 Cal.Rptr.3d 771, 135 P.3d 20 ("Normally, an attorney's conflict is imputed to the law firm as a whole on the rationale that attorneys, working together and practicing law in a professional association, share each other's, and their clients' confidential information." (citation and quotes omitted)); *SpeeDee*, 20 Cal.4th at 1139, 86 Cal. Rptr.2d 816, 980 P.2d 371 ("When a conflict of interest requires an attorney's disqualification from a matter, the disqualification normally extends vicariously to the attorney's entire law firm."); *Trone*, 621 F.2d at 999 ("Once the attorney is found to be disqualified, both the attorney and the attorney's firm are disqualified from suing the former client.")

█ Nevertheless, Plaintiff claims that disqualification is not warranted because an ethical wall was immediately imposed to cordon off Mr. Frank from the instant case after Mr. Frank spoke with Mr. Ellis on March 12, 2012. (Frank Decl. ¶ 18; Avenatti Decl. ¶¶ 2–4; Pl.'s Opp'n, at 20–22.)[5] As a matter of law, however, an ethical

wall is insufficient to overcome the possession of confidential information by the segregated attorney, except in very limited situations involving former government attorneys now in private practice. *See Hitachi, Ltd. v. Tatung Co.*, 419 F.Supp.2d 1158, 1165 (N.D.Cal.2006) ("The established rule in California is that where an attorney is disqualified from representing a client because that attorney had previously represented a party with adverse interests in a substantially related matter that attorney's entire firm must be disqualified as well, regardless of efforts to erect an ethical wall."); *Henriksen v. Great Am. Sav. & Loan*, 11 Cal.App.4th 109, 115–16, 14 Cal.Rptr.2d 184 (1992). Even if an ethical wall were legally sufficient, it was untimely because it was not imposed until March 12, 2012, two weeks after Plaintiff filed her complaint against Avon in *Estee Lauder* on February 28, 2012. Nor did Plaintiff's counsel send written notice to Avon regarding the implementation of an ethical wall as required under the Rules of Professional Conduct. *See* ABA Model Rules of Prof'l Conduct 1.10(a)(2)(ii) & (iii). The effectiveness of an ethical wall is further compromised by the close proximity of attorneys working together in one office at Eagan Avenatti, which consists of less than ten attorneys, and by Mr. Frank's co-representation of parties with Mr. Avenatti and Mr. Sims in several concurrent class actions. (*See* Ellis Decl., Exhs. H, I.) The Court also notes that Mr. Frank has already actively participated in the current litigation by speaking with Mr. Ellis about the case and the instant motion (as early as February 28, 2012), submitting a declaration in support

Nicholas Begakis, another associate and counsel for Avon at Paul Hastings, when he was a first-year attorney at the firm. (*Id.*)

**5.** Mr. Avenatti states that he spoke with Mr. Frank regarding Mr. Ellis' intent to move to

disqualify Plaintiff's counsel on May 12, 2012. (Avenatti Decl. ¶ 2.) The Court assumes Mr. Avenatti cited the May date in error, and he actually meant to say March 12, 2012.

of Plaintiff's opposition to the disqualification motion, reviewing Avon's motion, and even seeking to participate telephonically at the May 21, 2012 hearing. Mr. Frank's behavior casts doubt as to whether an ethical wall can be successfully implemented and maintained in this case.

■ The Court also finds that, although there is no direct California authority regarding vicarious disqualification of an associated law firm, disqualification of the X–Law Group is warranted under the circumstances of this case. The X–Law Group consists of four attorneys, two of whom have already collaborated with Eagan Avenatti in the filing of the complaint against Avon in *Estee Lauder* and this case. It is also reasonable to assume that the two law firms engaged in fairly extensive discussions about the case and Plaintiff's litigation strategy before filing their complaint and prior to the erection of an wall ethical segregating Mr. Frank from the case. Even if the X–Law Group did not, in fact, acquire confidential information, their involvement in the case would taint the appearance of probity and fairness of the proceedings. *See Fund of Funds, Ltd. v. Arthur Andersen & Co.*, 567 F.2d 225, 233 (2d Cir.1977) (disqualifying the associate firm because if only the conflicted firm were disqualified, it would be "allowing [the conflicted firm] to violate by indirection those very strictures it cannot directly contravene"). This is especially true in the class action context, where, as here, Plaintiff's counsel may seek to become class counsel and their integrity and professionalism will once again be placed at issue. *See* Fed.R.Civ.P. 23(g)(1)(A).

### D. Prejudice to Plaintiff

■ In a motion to disqualify, it is also proper to consider such factors as whether disqualification would result in prejudice to the nonmoving party. *Emp'rs Ins. of Wausau v. Albert D. Seeno Constr.*

*Co.*, 692 F.Supp. 1150, 1165 (N.D.Cal.1988) (citing *River W., Inc. v. Nickel*, 188 Cal. App.3d 1297, 1309–10, 234 Cal.Rptr. 33 (1987)). "Depending on the circumstances, a disqualification motion may involve such considerations as a client's right to chosen counsel, an attorney's interest in representing a client, the financial burden on a client to replace disqualified counsel, and the possibility that tactical abuse underlies the disqualification motion." *SpeeDee*, 20 Cal.4th at 1145, 86 Cal.Rptr.2d 816, 980 P.2d 371 (citations omitted). Here, the Court finds that prejudice to Plaintiff is minimal given the early stage of the litigation. Mr. Ellis notified Plaintiff of Avon's intention to move to disqualify her counsel on March 12, 2012, shortly after Plaintiff filed suit against Avon in *Estee Lauder*. (Ellis Decl. ¶ 11 & Exh. C.) Avon also promptly filed the present motion when Plaintiff voluntarily dismissed Avon from *Estee Lauder* and brought this separate suit against Avon. It was also Plaintiff who moved *ex parte* to continue the hearing on the disqualification motion, which was originally scheduled for April 30, 2012. The only other motion presently filed is Avon's motion to dismiss and strike the FAC, and it does not appear that the parties have engaged in any significant discovery. Combined with the fact that this case will proceed separately from the *Estee Lauder* action, Avon's motion to disqualify Plaintiff's counsel does not appear to be tactically motivated and granting it will not unduly prejudice Plaintiff.

### IV. CONCLUSION

For the foregoing reasons, Avon's motion to disqualify is GRANTED. The law firms of Eagan Avenatti and the X–Law Group are both disqualified from representing Plaintiff in the present lawsuit.